[Crim. No. 19956. Second Dist., Div. Four. May 19, 1971.]

In re GARY J., a Minor, on Habeas Corpus.

**COUNSEL**

Donald W. Pike, Peter Bull and Robert L. Walker for Petitioner.

Joseph P. Busch, Jr., District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Respondent.

## OPINION

**KINGSLEY, J.**—On February 9, 1971, a petition was filed in the Juvenile Court of Los Angeles County, alleging that the relator herein—Gary J.—was a person described by section 602 of the Welfare and Institutions Code,[1] in that he had committed an act which, if committed by an adult, would constitute a violation of section 211 of the Penal Code (robbery). After a detention hearing, the minor was detained pending a hearing on the petition. A "jurisdictional" hearing, pursuant to section 701,[2] was held on March 1, 1971, resulting in a finding that the allegations of the petition were true and that the minor was a person described by section 602. The proceedings were continued for a dispositional hearing, pursuant to section 702.[3] At that hearing, the court announced its intention to find, pursuant to section 707, that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, and that the court intended, under that section, to dismiss the petition and direct that the minor be prosecuted as an adult in the superior court. After

---

[1]Unless otherwise indicated, statutory references are to the Welfare and Institutions Code.

[2]Section 701 of the Welfare and Institutions Code reads as follows: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Sections 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."

[3]Section 702 of the Welfare and Institutions Code read as follows: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 600, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained. The court may make such order for detention of the minor or his release from detention, during the period of the continuance, as is appropriate."

an adjournment sought by the minor's counsel, such an order was made. The present proceeding is designed to test the validity of the order;[4] we conclude that it was validly made and not subject to attack herein.

## I

It is not here contended that the order was not based on evidence sufficient to support the findings required by section 707. The contentions are:

(1) That, as a matter of statutory construction, the order under section 707 must be made during the pendency of the 701 hearing and that, the 701 hearing having terminated, statutory power to send the juvenile to superior court for a criminal trial had lapsed; and

(2) That, at whatever stage the statute permits an order such as the one herein involved to be made, constitutional rights affording protection against double jeopardy prevent such action at any time after the 701 hearing has begun.

## II

We conclude that the statutory scheme was followed in the case at bench. Section 707 reads as follows: "At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, or if, at any time after such hearing, a minor who was 16 years of age or older at the time of the commission of an offense and who was committed therefor by the court to the Youth Authority, is returned to the court by the Youth Authority pursuant to Section 780 or 1737.1, the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume.

"In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, in itself, shall not be sufficient to sup-

---

[4]The contentions here made were seasonably raised in the juvenile court proceeding and by way of a petition for habeas corpus in the superior court.

port a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"A denial by the person on whose behalf the petition is brought of any or all of the facts or conclusions set forth therein or of any inference to be drawn therefrom is not, of itself, sufficient to support a finding that such person is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness."

Although sections 701 and 702 clearly contemplate that the determination of wardship, and the determination of treatment shall be separately considered; and, except in cases where the probation officer has anticipated the jurisdictional finding and prepared his social study in advance, that they will be made on different days, still the language of both sections speaks of "the" hearing and, in section 702, of a continuance of "the" hearing. We conclude that the statute did not intend, nor contemplate, that the 707 consideration should necessarily be part of a 701 hearing.

In fact, the whole philosophy of the present Juvenile Court Law is counter to the interpretation now urged. The purpose of requiring separate consideration of wardship and of disposition was to prevent the court from being affected, at the first stage, by evidence of the minor's character not relevant to determination of his guilt. (*In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal. Rptr. 671, 464 P.2d 127].) To require or even permit the introduction at the 701 hearing of the kind of data on which a 707 determination is made would violate both the letter and the spirit of the statute.[5]

We are aware of the language in *People* v. *Brown* (1970) 13 Cal.App.3d 876 [91 Cal.Rptr. 904], which seems to hold that the 707 finding must be made during a 701 hearing and prior to the conclusion of that stage. But that language is dicta; the 707 finding had been made during the 701 hearing; no objection was made to the consideration at that point of the evidence leading to the 707 decision. Under these circumstances, decision as to the point herein involved was not necessary for the decision of the case and, for the reasons above set forth, we are not inclined to follow it.

---

[5]Of course, we do not imply that evidence might not properly be offered and received at the 701 hearing which would, in and of itself, show that the minor was not one for whom juvenile court processes were appropriate.

## III

■ We conclude also that the constitutional rights against double jeopardy were not violated by the procedure herein adopted. It is clear that, at the time when the present Juvenile Court Law was under consideration, it was not thought that the concept of double jeopardy, as applied to adults in criminal cases, was applicable to juvenile court proceedings. In fact, the recommendation of the Special Study Commission, which drafted the proposals forming the basis for the 1961 revision, said:

"Recomendation No. 6

"Prohibit minors from being subject to criminal prosecution based on the facts giving rise to a juvenile court petition once final judgment has been made in the juvenile court, except that a finding of unfitness in the juvenile court shall not constitute final judgment in the terms of this recommendation.

"Comments:

"There are several cases on record where juveniles have been tried and sentenced in a criminal court for an offense upon which final judgment was previously made in the juvenile court. Such a course of action, while rare, is unfortunately permissible under the present juvenile court law.

"In an adult case, this is prohibited because it would constitute placing the individual in double jeopardy. The Commission sees no valid reason why juveniles, as well, should not be protected from such proceedings.

"In so recommending, the Commission proposes that the proceeding by which a minor is found unfit for processing in the juvenile court shall not constitute final judgment in terms of this recommendation. Thus, the information disclosed at the juvenile court hearing in certified cases would be permitted to be considered in the criminal courts."

That recommendation is now embodied in section 606 of the act.

Ten years later, in *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664], the Supreme Court determined that, in view of decisions of the United States Supreme Court which had been rendered after the present Juvenile Court Law was adopted: ". . . [i]n proceedings before the juvenile court juveniles are entitled to constitutional protections against twice being placed in jeopardy for the same offense." The issue before us is whether that proposition operates to bar the kind of disposition of a juvenile case that was made here. We conclude that it does not.

There are three situations in which it could be contended that the constitutional rights had been violated: (a) where, as in *Richard M.*, the minor is, in effect, found not guilty of the offense underlying the section 602 petition; (b) where the minor is made a ward under section 701 and the 702 hearing has resulted in a treatment disposition order under section 725— here both section 606 and the Constitution would prohibit a renewal of the case in another court; (c) the case at bench, where no final disposition order has been made.

In the situation before us, while it is true that, under the language in *Richard M.*, jeopardy had attached once the first witness had testified at the 701 hearing, no *new* jeopardy has arisen by the proceedings sending the case to the criminal court. The entire Juvenile Court Law contemplates a careful determination, on a case-by-case basis,[6] as to the type of procedure most likely to protect society and to rehabilitate the minor. Under some circumstances, a minor will go from the criminal court to the juvenile court; in other cases he will go from the juvenile court to the criminal court. But, until one court or the other reaches a final disposition of the case, only a single jeopardy is involved. In *Richard M.*, the Supreme Court impliedly felt this to be true; in recounting the risks which that minor had faced, the court enumerated not only the possibility of a disposition at a 702 hearing but it expressly mentioned the very possibility which has here occurred.[7]

In short we can find neither statutory nor constitutional objections to the order herein attacked. The petition for a writ of habeas corpus is denied.

Files, P. J., and Jefferson, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 4, 1971. Peters, J., was of the opinion that the petition should be granted.

---

[6]*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709 [91 Cal.Rptr. 600, 478 P.2d 32]; *Bruce M.* v. *Superior Court* (1969) 270 Cal.App.2d 566 [75 Cal.Rptr. 881].

[7]"The minor was exposed to the possibility that an adjudication would be made; that the court might then proceed to the dispositional phase of the bifurcated juvenile court proceedings (§ 702); and that, since an uncontested hearing was anticipated that the Social Report and Recommendations of the Probation Officer were prepared and available (§ 702). The minor was not immune from the possibility that the court would determine that he was not amenable to the programs available to the juvenile court and that it might direct that he be prosecuted under the applicable criminal statute (§ 707)." (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664].)