Gary Stevens **JONES**, a minor, By and Through Lola Mae Jones, his guardian ad litem, Petitioner-Appellant,

v.

Allen F. **BREED**, Director of the California Youth Authority, and Robert McKibben, Superintendent of the Southern Regional Center Clinic, California Youth Authority, Respondents-Appellees.

**No. 72–2644.**

United States Court of Appeals, Ninth Circuit.

May 15, 1974.

---

Robert L. Walker (argued), Peter Bull, San Francisco, Cal., for petitioner-appellant.

Russell Iungerich, Deputy Atty. Gen. (argued), Evelle J. Younger, Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before GOODWIN and WALLACE, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

Seventeen-year-old Jones was apprehended for robbery, detained and adjudicated a ward of the juvenile court. Subsequently, he was referred for trial as an adult and was convicted. Having exhausted his state remedies, he unsuccessfully applied to the district court for habeas corpus relief, claiming a violation of his Fifth Amendment right against double jeopardy. We reverse.

California does not challenge the use of habeas corpus as a proper remedy in this case, see Fain v. Duff, 488 F.2d 218 (5th Cir. 1973), or contend that Jones has not exhausted his state remedies. The sole question before us is whether jeopardy attached during the juvenile court proceedings to prevent Jones' trial as an adult.

The State of California filed a petition in the juvenile court alleging that Jones, a minor, had committed an act which, if committed by an adult, would be a violation of Cal.Penal Code § 211 (robbery). If the allegations in the petition were true, the juvenile court had jurisdiction pursuant to Cal.Welf. & Inst'ns Code § 602.[1] The juvenile court, following a preliminary hearing, ordered that Jones be detained pending a hearing on the delinquency petition.

 Twenty days later, the juvenile court held the delinquency hearing[2] for the purpose of determining whether Jones had committed the crime alleged, whether the juvenile court had jurisdiction and whether Jones would be adjudged a ward of the court.[3] Thus, for the juvenile court to proceed, the state had to prove that Jones committed the robbery. With the exception of a right to a jury trial, the delinquency hearing is in the nature of a criminal trial. See In re Winship, 397 U.S. 358, 365–366, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 49–51, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Jones and two prosecution witnesses testified at the hearing. The juvenile court found that Jones had committed the robbery and that Jones was under the jurisdiction of the juvenile court and continued the proceedings to a later date at which time the court would determine the proper disposition of Jones.[4] At the

---

* Honorable WILLIAM G. EAST, Senior United States District Judge, Eugene, Oregon, sitting by designation.

1. Cal.Welf. & Inst'ns Code § 602 provides in part:

 Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.

2. Cal.Welf. & Inst'ns Code § 701 provides in part:

 At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are al-

leged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602 . . . .

3. See note 1, *supra*.

4. Cal.Welf. & Inst'ns Code § 702 provides in part:

 After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 600, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall

subsequent hearing, the juvenile court judge announced he did not intend to proceed with Jones as a juvenile but intended to find him unamenable to the rehabilitative facilities of the juvenile court and to direct the District Attorney to prosecute Jones as an adult.[5] Upon an objection by Jones that he had assumed the hearing was to determine disposition to the appropriate juvenile facility, not to determine certification to the adult court for criminal prosecution, the court granted a one-week continuance. At the next hearing, Jones objected to the certification, contending, among other things, that he had already been adjudicated a person described in Cal.Welf. & Inst'ns Code § 602[6] by the juvenile court and, therefore, certification to be "tried" again would place him twice in jeopardy. The court rejected the argument and certified Jones to be tried as an adult.

Following an unsuccessful attempt to secure habeas corpus relief in the state courts, Jones was tried and found guilty of armed robbery and his double jeopardy argument was again rejected.

Undaunted, Jones filed a petition for habeas corpus in the district court, once more claiming double jeopardy. The district court judge denied the petition, holding that jeopardy does not attach in the juvenile proceedings and even if it had, no new jeopardy arose by the procedure of certifying Jones to be tried and ultimately convicted as an adult. Jones v. Breed, 343 F.Supp. 690 (C.D.Cal. 1972).

We must first resolve whether the protection of the Fifth Amendment "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . " applies to juvenile court proceedings.[7] Certainly the constitutional mandate makes no distinction between adults and juveniles. *See* In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 16 L.Ed.2d 1013 (1967). The district court found that the nature of the juvenile court proceeding is such that it should be treated differently from adult criminal proceedings and double jeopardy restrictions should not be applied.

The juvenile court system was conceived around the turn of the century with the emergence of the enlightened concept of separating erring children from hardened felons.[8] The primary

make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance . . . .

5. Cal.Welf. & Inst'ns Code § 707 provides in part:

At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, . . . the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume.

6. See note 1, *supra.*

7. The double jeopardy clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (overruling Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).

8. Mennel, Origins of the Juvenile Court: Changing Perspectives on the Legal Rights of Juvenile Delinquents, 18 Crime and Delin. 68, 69 (1972); Comment, Constitutional Rights of Juveniles: Gault and Its Applica-

objective of the new system was to take juvenile offenders out of adult courts and adult bastilles and provide them with a sound rehabilitation program.[9] The system was envisioned as civil in nature rather than criminal. Traditional adversarial fact-finding procedures were abandoned in favor of informal procedures that would allow the court to determine what was in the juvenile's best interest and how he could be retrained, while at a pliable age, to live lawfully in society.[10] The juvenile court judge, in his role as "father" [11] to the erring juvenile, was to protect his interest and welfare. Rules of evidence were abandoned and constitutional guarantees provided in adult proceedings were not afforded juveniles.[12]

Although the adoption of these informal methods was perhaps sound in principle, the complexities of our society and our overcrowded juvenile court facilities dictated some modification.[13] In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Court analyzed the procedure for referring a juvenile for trial as an adult. Recognizing the significant disparity of what could happen to the juvenile depending upon whether he was tried as a juvenile or as an adult, the Court was no longer willing to have the waiver of jurisdiction decision made without the due process requirements of a hearing, representation by counsel, a statement of reasons

or considerations for any referral to the adult court and opportunity for the juvenile's counsel to review the child's social study records.

*Kent* was followed by In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 16 L.Ed.2d 1013 (1967), in which the Court mandated due process protection at the delinquency hearing by requiring (1) that the juvenile be given adequate notice of the charges, (2) that he be given the right to counsel, (3) that he be allowed to assert the privilege against self-incrimination and (4) that he be given the right to confront and cross-examine witnesses. More importantly, the *Gault* Court sounded a new approach to the juvenile system and rejected the theory that constitutional safeguards should be denied juveniles by the expedient of labeling the proceedings as civil when in fact they were criminal in nature. The Court reemphasized this requirement in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), holding that the charges against the juvenile must be proven at the delinquency hearing beyond a reasonable doubt. After *Winship*, if the state wished to limit constitutional rights, it inherited the burden of proving that criminal safeguards would be detrimental to particular aspects of the juvenile system.[14]

It was unclear, however, whether these constitutional safeguards [15] included the Fifth Amendment protection

tion, 9 Wm. & Mary L.Rev. 492 (1967); Note, Due Process and the Juvenile Offender: The Scope of In re Gault, 14 How.L.J. 150, 151 (1968). For a very thorough history of· the juvenile justice system in the United States from its meager beginning in the 1820's to the landmark enactment of the juvenile court in Illinois in 1899 (the forerunner of the modern movement), see Fox, Juvenile Justice Reform: An Historical Perspective, 22 Stan.L.Rev. 1187 (1970), and Mennel, *supra.*

9. Note, *supra* note 8, at 151; Comment, *supra* note 8, at 492.

10. Mennel, *supra* note 8, at 69; Note, *supra* note 8, at 151; Comment, *supra* note 8, at 492.

11. Haviland, Daddy Will Take Care of You: The Dichotomy of the Juvenile Court, 17 Kan.L.Rev. 317, 322 (1969).

12. *Id.*

13. McKeiver v. Pennsylvania, 403 U.S. 528, 543–545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Comment, *supra* note 8, at 492; see Note, *supra* note 8, at 151.

14. The Supreme Court, 1969 Term, 84 Harv.L.Rev. 1, 160 (1970).

15. Following *Gault*, many commentators speculated on what additional constitutional safeguards would be available to juveniles. *See* Carver and White, Constitutional Safeguards for the Juvenile Offender, Implications of Recent Supreme Court Decisions, 14

against double jeopardy.[16] The Supreme Court has held that not all common-law protections available to adults are available to juveniles. The Constitution does not require the total emasculation of juvenile court procedures. As Justice Blackmun stated in McKeiver v. Pennsylvania, 403 U.S. 528, 551, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647 (1971):

> If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it.

The basic approaches of the juvenile and adult adjudicative processes dictate that the systems not operate exactly alike. In *McKeiver*, the Court rejected the contention that a juvenile court must provide a jury trial; Justice Blackmun stated:

> If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial.

403 U.S. at 550. But that case does not dictate the nonapplicability of double jeopardy. Whether a jury is required deals with the method of juvenile adjudication; whether double jeopardy applies goes to the very core of basic application of rights and does not affect how the juvenile is tried. Its only effect on procedure pertains to whether the hearing to determine whether a minor is a fit subject for the juvenile program must be held before he is adjudicated a ward of the court. Applying double

jeopardy protection to juvenile proceedings will not impede the juvenile courts in carrying out their basic goal of rehabilitating the erring youth. Indeed, basic constitutional guarantees such as that against double jeopardy are so fundamental to our notions of fairness that our refusal to find them applicable to the youth may do irreparable harm to or destroy their confidence in our judicial system. Ultimately, this may be more important than our recognition of the need for special and informal procedures to rehabilitate juveniles.

■ A youth is entitled to double jeopardy protection particularly when the state has elected to try him as an adult. We agree with the Fifth Circuit's statement in Fain v. Duff, 488 F. 2d 218, 225 (5th Cir. 1973):

> Here we have a juvenile threatened with a criminal prosecution. By indicting him, the state has expressed a desire to treat him in all respects as an adult. Is there any question that since the state now proposes to subject him to the powers of the state as it would an adult, it must now accord him all the procedural rights that an adult has?

We hold that the Fifth Amendment guarantee of double jeopardy is fully applicable to juvenile court proceedings.

■ Having concluded that the protection against double jeopardy is among the safeguards available to a juvenile, we must decide whether jeopardy attaches during the delinquency hearing. When the juvenile court can, on the basis of the delinquency hearing, impose severe restrictions upon the juvenile's liberty, we believe jeopardy attaches. As the Fifth Circuit, when faced with a

Crime and Delin. 63 (1968); Gardner, Gault And California, 19 Hastings L.J. 527 (1968); Comment, Juvenile Court Procedures Beyond GAULT, 32 Albany L.Rev. 126 (1967); Note, Extending Constitutional Rights to Juveniles—Gault in Indiana, 43 Ind.L.J. 661 (1968); Note, The Constitution And Juvenile Delinquents, 32 Mont.L.Rev. 307 (1971); Comment, In Re Gault And The Persisting

Questions of Procedural Due Process And Legal Ethics In Juvenile Courts, 47 Neb.L. Rev. 558 (1968).

16. Note, Double Jeopardy and the Waiver of Jurisdiction in California's Juvenile Courts, 24 Stan.L.Rev. 874 (1972); Note, Double Jeopardy and Due Process in the Juvenile Courts, 29 U.Pitt.L.Rev. 756 (1968).

similar question in Fain v. Duff, 488 F. 2d at 225, concluded:

> Although commitment to the Division of Youth Services may result in the juvenile being allowed to return to his home, it may also result in incarceration until age 21. Fain's commitment to the division resulted from his having been found delinquent. And his being found delinquent resulted from his having violated a criminal law of the State of Florida. F.S.A. § 39.-01(9). Thus, a violation of the criminal law may directly result in incarceration. This is a classic example of "jeopardy."

Several states have held that jeopardy attaches in the juvenile court proceeding.[17] The California Supreme Court in Richard M. v. Superior Court, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971), held that a second juvenile prosecution is barred where the identical delinquency petition has been dismissed in a prior juvenile court proceeding where, after a hearing on the merits, a termination similar to an acquittal has been ordered.

Although California concedes that jeopardy attaches when the juvenile is adjudicated a ward of the court, it argues that no *new* jeopardy attaches when the juvenile is referred to the adult court and subsequently convicted. It contends that the juvenile's prosecution in both the juvenile and adult courts is one continuous proceeding. To provide a legal theory for its position, California points to its own decisions contending that there is a "continuing jeopardy." Bryan v. Superior Court, 7 Cal.3d 575, 583, 102 Cal.Rptr. 831, 498

P.2d 1079 (1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 610 (1973). That theory was applied by the California District Court of Appeal and by the United States District Court in this case. In re Gary J., 17 Cal.App.3d 704, 95 Cal.Rptr. 185 (1971); Jones v. Breed, 343 F.Supp. 690, 692 (C.D.Cal. 1972).

Jones argues, on the other hand, that if the juvenile court is to certify a child to the adult court free of jeopardy, it must do so at a fitness hearing held prior to any determination of delinquency. There is no doubt that this is the preferred practice. Antieau, Constitutional Rights in Juvenile Courts, 46 Cornell L.Q. 387, 397–98 (1961); California Juvenile Court Deskbook, § 10.4, at 148–50 (Cal. College of Trial Judges (1972)); Model Rule for Juvenile Courts 9, National Council on Crime and Delinquency (1969). In fact, the California Supreme Court has commended this procedure. Donald L. v. Superior Court, 7 Cal.3d 592, 598, 102 Cal.Rptr. 850, 498 P.2d 1098, 1101 (1972).[18]

The question, however, is not whether it is preferable to have the fitness hearing first,[19] but whether the subsequent adult trial is a new jeopardy rather than a continuing jeopardy which both parties agree attaches at the juvenile court delinquency hearing. The theory of continuing jeopardy was implied in United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), and enunciated by Justice Holmes in his dissent in Kepner v. United States, 195 U.S. 100, 134–135, 24 S.Ct. 797, 49 L.Ed. 114 (1904). In *Kepner* the Court held that to allow the prosecution to appeal from

---

17. *E. g., Arizona:* Anonymous v. Superior Court, 10 Ariz.App. 243, 457 P.2d 956 (1969); *Idaho:* State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); *Iowa:* State v. Halverson, 192 N.W.2d 765 (Iowa 1971); *Texas:* Collins v. State, 429 S.W.2d 650 (Tex.Civ.App.1968).

18. The thrust of Jones' argument is that, in order to comport with the prohibition

against double jeopardy, the juvenile court must waive jurisdiction in favor of the adult court prior to the delinquency hearing and not after it. Some states provide for this by statute. *E. g.,* Ga.Code Ann. § 24A–2501; N.M.Stat.Ann. § 13–14–27.

19. The fitness hearing procedure is described in Jimmy II. v. Superior Court, 3 Cal.3d 709, 91 Cal.Rptr. 600, 478 P.2d 32 (1970).

a judgment of acquittal would place a defendant in double jeopardy. Justice Holmes dissented, arguing that "a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy from its beginning to the end of the cause." The prohibition of double jeopardy, he argued, only forbids "a trial in a new and independent case where a man already [has] been tried once." 195 U.S. at 134.

■■ The Court has never adopted Holmes' theory,[20] but it has adopted a form of continuing jeopardy under which a person may be retried on any changes of an indictment for which he has been convicted and for which he has, upon an appeal initiated by him, had that conviction reversed. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). If he has been acquitted, either implicitly or expressly, of any charge, he cannot be retried on that charge. Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Similarly, he may not be tried for a single offense growing out of a single occurrence, criminal episode or transaction by two courts created under the authority of one state. Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

■ The principles of continuing jeopardy, as adopted by the Supreme Court, do not support California's argument that the jeopardy that attaches at the juvenile adjudicatory hearing continues through the adult trial.[21] First, the trial in adult court does not follow as a result of an appeal taken by the minor from his juvenile court conviction, but is a retrial for the same offense initiated by the state. Continuing jeopardy allows retrial following an appeal initiated by the defendant claiming error in his first conviction. If the conviction is reversed, retrial must be in the same court as the first trial. It would be in violation of the principles enunciated in Price v. Georgia and Green v. United States to allow the state to initiate a retrial after it has already obtained a conviction in juvenile court. Second, transfer following the adjudicatory hearing would essentially allow the minor to be tried for one offense in two courts created by the same state in violation of the principles enunciated in Waller v. Florida and Ashe v. Swenson. The juvenile courts are a separate court system from the adult courts and once a minor has been placed in risk of conviction he cannot be retried. Although trial in both the juvenile and the adult court may not result in separate punishment, double jeopardy protects double risk of conviction, not just double risk of punishment. Price v. Georgia, 398 U.S. at 331. Rather than supporting California's approach, the principles of continuing jeopardy dictate that once jeopardy has attached to a minor in a juvenile court delinquency hearing, he may not be placed in peril of conviction in an adult court for charges based on any oc-

20. [Justice Holmes] did dissent from the holding in *Kepner*—that the Government could not appeal an acquittal—on the ground that a new trial after an appeal by the Government was part of a continuing jeopardy rather than a second jeopardy. But that contention has been consistently rejected by this Court.
Green v. United States, 355 U.S. 184, 196, 78 S.Ct. 221, 228, 2 L.Ed.2d 199 (1957).

21. As one commentator recently asserted: Continuing jeopardy relies on the assumption that the several trials are all based on the same complaint. In the certification situation this underlying premise is lacking. When the juvenile court judge enters a finding of nonamenability, the juvenile petition is dismissed; subsequent criminal action is based on a new complaint alleging the same facts. Even under Holmes's formulation this would not be continuing jeopardy since each prosecution proceeds under the authority of a different complaint.
Note, Double Jeopardy and the Waiver of Jurisdiction in California's Juvenile Courts, 24 Stan.L.Rev. 874, 888 (1972) (footnotes omitted).

currence, criminal episode or transaction used as the basis for the petition in the juvenile court.

The Fifth Circuit in Fain v. Duff, 488 F.2d 218 (5th Cir. 1973), reached this same conclusion. Fain was arrested for rape and adjudged a delinquent by a juvenile court. Subsequently, a grand jury indicted him for the same offense. Habeas corpus issued from the district court based upon former jeopardy and the circuit court affirmed. We detect no reason to distinguish *Fain* from our case and are disposed to adopt its reasoning. We recognize there is dicta to the contrary in United States v. Dickerson, 271 F.2d 487 (D.C.Cir. 1959), but that language has been so undercut by *Kent, Gault* and *Winship*, that we are not persuaded that it is a correct statement of today's law.

There are basic issues of fairness upon which we should comment. Nowhere in our criminal system do we allow the prosecution to review in advance the accused's defense and, as here, hear him testify about the crime charged. The most heinous and despicable criminal is saved from such an invasion of his fundamental rights. Yet, if we adopt California's position, we approve having such a procedure applied to those of tender years. This offends our concepts of basic, even-handed fairness.

We hold that once jeopardy attaches at the adjudiciatory or jurisdictional hearing in the juvenile court (here held pursuant to Cal.Welf. & Inst'ns Code § 602), the minor may not be retried as an adult or a juvenile absent some exception to the double jeopardy prohibition. There was none here. We cannot allow this fundamental constitutional right to be wrenched from the minor under the guise of providing a system for his protection.

We reverse with directions for the district court to issue a writ of habeas corpus directing the state court, within 60 days, to vacate the adult conviction of Jones and either set him free or remand him to the juvenile court for disposition.