[Crim. No. 19038. In Bank. Apr. 28, 1976.]

In re ALFREDO RAY BRYAN on Habeas Corpus.

## COUNSEL

Robert L. Walker for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Harriet Wiss Hirsch, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—Alfredo Ray Bryan seeks a writ of habeas corpus asserting that a juvenile court adjudication of wardship constituted a first subjection to jeopardy which precluded a subsequent prosecution and conviction for the identical conduct on which the wardship determination was grounded. Petitioner relies on *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779], which, if it is to aid him, must be given retroactive effect. We conclude that petitioner's contentions are meritorious and grant the writ as hereinafter provided.

In 1969 when petitioner was 16 years of age, juvenile court proceedings were commenced wherein it was alleged that he was within the jurisdiction of the court because he had murdered one victim and had assaulted, with intent to murder, a second victim. (Welf. & Inst. Code, § 602.) After an ineffective 1969 hearing (see *Alfred B.* v. *Superior Court* (1970) 3 Cal.3d 718 [91 Cal.Rptr. 605, 478 P.2d 37]) the juvenile court in 1971 conducted a three-stage hearing. The court first found that petitioner was a proper subject to be dealt with under the Juvenile Court Law. It next found, after petitioner's admission that he had committed the homicide, that he was subject to the court's jurisdiction as a ward thereof (the "jurisdictional" hearing). At the final, dispositional hearing petitioner was committed to the Youth Authority. (See *Bryan* v. *Superior*

*Court* (1972) 7 Cal.3d 575, 579 [102 Cal.Rptr. 831, 498 P.2d 1079], cert. den., 410 U.S. 944 [35 L.Ed.2d 610, 93 S.Ct. 1380].) However, the authority refused to accept the commitment and petitioner was returned to the juvenile court for further proceedings. The court then found, contrary to its finding in the first of the three-stage hearings, that petitioner was not a proper subject to be dealt with under the Juvenile Court Law and ordered prosecution under the general criminal law. (*Id.,* at pp. 577-578.)

Petitioner, by application to this court for extraordinary writs, challenged the right of the state to prosecute him under the general criminal law, claiming inter alia that to so prosecute him would constitute a second subjection to jeopardy after a first subjection in the juvenile court. We held that the constitutional bars against twice being placed in jeopardy apply to juveniles (see *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664]); that jeopardy attaches when the jurisdictional stage of juvenile court proceedings has been entered upon; that such jeopardy, however, is a continuing jeopardy which is not terminated by a dispositional order in the juvenile court or an order by that court transferring proceedings to a criminal court and that there was accordingly no second exposure to jeopardy. (*Bryan* v. *Superior Court, supra,* 7 Cal.3d 575, 580-584.) After our denial of petitioner's application for extraordinary relief he was tried and convicted in June 1973 of murder in the second degree (Pen. Code, § 187) and of assault with intent to commit murder (Pen. Code, § 217).

In *Breed* v. *Jones, supra,* 421 U.S. 519, the United States Supreme Court rejected the concept of a single, continuing jeopardy in a case involving California juvenile-criminal proceedings indistinguishable in substance from the instant proceedings and held that a criminal prosecution after an adjudicatory hearing in the juvenile court "violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment." (*Id.,* at p. 541 [44 L.Ed.2d at p. 362].) ■ There remain the questions of the temporal applicability of *Breed,* as the proceedings herein all predated the filing of the decision in that case, and the extent to which petitioner was subjected to jeopardy at the 1971 adjudicatory hearing.

*Linkletter* v. *Walker* (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731] altered the general rule of retroactive application of United States Supreme Court decisions based on constitutional grounds. That case and following cases established criteria for determining whether new consti-

tutional interpretations involving criminal rights are to be given retroactive or only prospective effect. (*Robinson* v. *Neil* (1973) 409 U.S. 505, 507 [35 L.Ed.2d 29, 32, 93 S.Ct. 876].) The criteria are "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." (*Halliday* v. *United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498].)

The court has recognized, however, that these criteria do not lend themselves to analysis of cases involving the prohibition against double jeopardy. (*Robinson* v. *Neil, supra,* 409 U.S. 505, 507-508 [35 L.Ed.2d 29, 32-33].) *Robinson* gave retroactive effect to *Waller* v. *Florida* (1970) 397 U.S. 387 [25 L.Ed.2d 435, 90 S.Ct. 1184]. *Waller* rejected the application of the dual sovereignty doctrine to separate municipal and state prosecutions for the same act and held that such prosecutions constituted a double exposure to jeopardy. (*Id.,* at p. 395 [25 L.Ed.2d at pp. 440-441].) The court reasoned in *Robinson*: "The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to affect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, *Mapp* v. *Ohio* [(1961) 367 U.S. 643 (6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933)]. In *Waller,* however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant." (*Robinson* v. *Neil, supra,* 409 U.S. 505, 509 [35 L.Ed.2d 29, 33].)

In deciding *Robinson* the court did not entirely abandon the three-part *Linkletter* test. Instead it stated that the reliance element of that test "will not be wholly absent in the case of constitutional decisions not related to trial procedure . . . ." (*Robinson* v. *Neil, supra,* 409 U.S. 505, 509 [35 L.Ed.2d 29, 33].) The court expressly refused to state, however, what weight would be given to the reliance element, having found such reliance absent in the case before it. (*Id.,* at pp. 510-511 [35 L.Ed.2d at p. 34].)

Although our decision in *Bryan* was grounded on a concept of continuing jeopardy, such concept was the rule in this state for only a brief three-year period and does not appear to have ever been applied in this context by the United States Supreme Court. (See *Waller* v. *Florida, supra,* 397 U.S. 387.) To the contrary, ever increasing constitutional protections have been granted juveniles. (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) There is thus little weight which may be accorded to the reliance element of the *Linkletter* test in the context of this case.

The purpose of the double jeopardy prohibition is manifestly not directed to the fairness or integrity of the fact finding process as emphasized in *Linkletter* and the cases construing it but to the elimination of the burden of multiple prosecutions. The purpose which the prohibition seeks to accomplish is thus not one which may or may not be served depending on whether a rule designed to implement it is to be given only prospective application. We conclude accordingly that the general rule of retroactivity is applicable without a *Linkletter* or similar test in the case of a decision compelled by constitutional prohibitions against multiple jeopardy. *Breed* is thus to be given retrospective application.

There can be no doubt that petitioner was subjected to jeopardy at the 1971 adjudicatory hearing when he admitted he killed one victim, or that he was subjected to jeopardy a second time for the same act when he was convicted in adult court for murdering that victim. Accordingly, petitioner's 1973 second degree murder conviction cannot stand. ▮ He was also, of course, convicted of assault with intent to commit murder in the 1973 trial, and the question remains whether he was subjected to jeopardy for that act in the 1971 adjudicatory hearing. We conclude that he was.

We are not unmindful of our previous examination of the 1971 adjudicatory hearing in which we stated, "On the jurisdictional issue the court first, in response to an unopposed motion of petitioner's counsel, dismissed the petition charging aggravated assault. It then read the murder charge to petitioner and advised him of his rights . . . . The court accepted his limited admission that he 'killed Jerry Maddox.' " (*Bryan* v. *Superior Court, supra,* 7 Cal.3d 575, 579.) We have reexamined the reporter's transcript of the adjudication hearing and find that it is

ambiguous at best.[1] At most it appears that the court intended to dismiss the assault petition, but it did not do so before petitioner admitted the killing. Moreover, it does not appear that there was a plea bargain to ,dismiss the assault petition. The petition alleging assault was never read, nor was any evidence or plea taken on it.

Although separate petitions alleging homicide and assault were filed on different dates, both were derived from a single course of conduct. Petitioner admitted the homicide with the knowledge that the court intended to commit him to the California Youth Authority. Commitment to the Youth Authority is the placement of last resort for juvenile offenders. (*In re Aline D.* (1975) 14 Cal.3d 557, 564 [121 Cal.Rptr. 816, 536 P.2d 65].) The juvenile court would not have restrained petitioner's liberty to a greater degree even had the allegation of assault been admitted or found to be true. Petitioner could not have been subjected to a greater term of confinement by the Youth Authority if both allegations had been admitted or found true. (See Welf. & Inst. Code, §§ 1765, 1766, and 1769.) An adult offender might suffer conviction for a lesser offense and receive a reduced sentence in return for a plea of guilty, but petitioner received no similar benefit on account of his admission. Under these circumstances we conclude that jeopardy attached for both assault and murder in the 1971 juvenile adjudication.

Nothing in *Breed* precludes a further disposition by the juvenile court in a suitable case. This is not such a case, however, because petitioner is now beyond the jurisdiction of the juvenile court.

The judgment of conviction of murder and assault is vacated. The writ is granted. Respondent is directed to discharge petitioner from custody upon the finality of this opinion.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I concur with the majority opinion under compulsion of *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779], to the extent that it orders petitioner's murder conviction vacated. It is likely that the United States Supreme Court when called upon will

---

[1]Discussion of dismissal of the petition alleging assault was limited to the following:
"[Petitioner's counsel]: I feel probably the other petitions are superfluous, but unless the district attorney wants to dismiss them and go on the [homicide] petition I see no reason to go on all—
"[Prosecutor]: We have no objection to it, that handling of the matter.
"THE COURT: Very well."

declare retroactive its decision in *Breed.* I respectfully dissent, however, from the majority's conclusion that *Breed* would require that petitioner's separate conviction for assault with intent to commit murder also be vacated. The assault charge, involving a second victim, was dismissed during the course of the juvenile court proceedings, and no evidence was introduced, or plea taken, regarding that charge. Under these circumstances, I cannot join the majority in their holding that ". . . jeopardy attached for both assault and murder in the 1971 juvenile adjudication."

According to the record, in 1969 two separate petitions were filed in juvenile court, the first alleging that petitioner murdered Jerry Maddox and the second alleging that he assaulted F. Benavidez with intent to commit murder. These offenses allegedly arose out of a single incident during which petitioner shot and killed Police Officer Maddox and fired three times at, and missed, Officer Benavidez.

At the juvenile court hearing in question, before any evidence or plea was taken regarding either petition, the district attorney and defense counsel agreed that the assault petition should be dismissed. The court concurred, stating "very well," although no formal order of dismissal was entered at that time. (The clerk's minutes confirm that the assault petition was dismissed.) Evidently, both the People and the defense deemed the assault petition superfluous in view of the more serious uncontested charges alleged in the murder petition. Immediately after the foregoing colloquy regarding dismissal of the assault petition, the court formally advised petitioner that a petition had been filed against him alleging the murder of Jerry Maddox. *No mention was made of the assault petition.* The court explained to petitioner his various constitutional rights, and obtained from him the admission that the allegations of the murder petition were true and that he had killed Maddox. Thereupon, petitioner was ordered committed to the California Youth Authority.

It seems very apparent to me that petitioner was never placed in jeopardy with respect to the assault charge during the juvenile proceedings, and that accordingly petitioner was properly brought to trial in superior court for that offense. Jeopardy attaches in juvenile proceedings when the jurisdictional hearing is "entered upon." (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 582 [102 Cal.Rptr. 831, 498 P.2d 1079]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; *In re Gary J.* (1971) 17 Cal.App.3d 704, 710 [95 Cal.Rptr. 185].) Borrowing from the analogy in criminal cases tried by the court, in

which jeopardy attaches *when the first witness is sworn,* we held in *Richard M.* that jeopardy attached in a juvenile court proceeding once the minor, though unsworn, commenced to testify regarding the offense in question. We noted that "The petition was sufficient in form and substance to sustain an adjudication of delinquency. The People actively prosecuted the charges by filing the petition and having the matter set for a jurisdictional hearing. . . . The court proceeded to examine the minor in the presence of his parents and they all testified. *The minor was exposed to the possibility that an adjudication would be made;* that the court might then proceed to the dispositional phase . . . ." (*Id.,* at p. 376, italics added.)

The United States Supreme Court likewise has recently stated that "In a nonjury trial, jeopardy attaches when the court begins to hear evidence. [Citations.] The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' [Citations.]" (*Serfass* v. *United States* (1975) 420 U.S. 377, 388 [43 L.Ed.2d 265, 274, 95 S.Ct. 1055]; see also *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086] [jeopardy attaches when a nonjury trial is " 'entered upon' by the reception of evidence or otherwise"].)

I conclude that at no time during the juvenile proceedings was petitioner exposed to jeopardy on the assault charge within the meaning of the foregoing cases. No evidence of the assault was introduced at the hearing, and petitioner's admissions were limited entirely to the murder charge. Although petitioner's murder conviction should be vacated, the assault conviction should stand. Accordingly, petitioner is not entitled to release from custody.

McComb, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied May 26, 1976. McComb, J., Clark, J., and Richardson, J., were of the opinion that the petition should be granted.