[Crim. No. 18791. Dec. 19, 1977.]

In re PHILLIP JAMES HURLIC on Habeas Corpus.

**COUNSEL**

Richard H. Levin, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Richard D. Garske, Deputy Attorneys General, for Respondent.

## OPINION

**CLARK, J.—** ▉ On application of Phillip James Hurlic for writ of habeas corpus we issued an order requiring the Director of the Department of Corrections to show cause why petitioner, an inmate of state prison, should not be discharged from confinement on the ground criminal proceedings leading to his 1969 conviction of murder in the first degree (see *People* v. *Hurlic* (1971) 14 Cal.App.3d 122 [92 Cal.Rptr. 55]) exposed him to jeopardy a second time contrary to state and federal constitutional prohibitions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 13, now art. I, § 15.)

Petitioner, who was a minor at the time of his conviction, claims he was first exposed to jeopardy in juvenile court proceedings when he was adjudicated, for the identical violation of which he was later convicted, to come within the provisions of Welfare and Institutions Code section 602.[1] ▉ Subjection to such an adjudicatory hearing would constitute exposure to jeopardy, precluding subsequent criminal prosecution for the same course of conduct on which the adjudication was grounded. (*Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]; *In re Bryan* (1976) 16 Cal.3d 782 [129 Cal.Rptr. 293, 548 P.2d 693].) The critical question is whether petitioner was in fact exposed to jeopardy in juvenile court proceedings.

Petitioner was convicted of the 1968 murder of one of the operators of a feed store.[2] The only incriminating evidence of record was an extrajudicial confession by petitioner. He stated he and another juvenile, Bozzie Burton, had planned to rob the feed store and during the course of the robbery Burton, without any forewarning to petitioner, shot one of the victims. Petitioner, after ascertaining the first shot had not attracted attention, held the gun while Burton took money from a cash register and, again without forewarning, shot the second victim.

---

[1]Section 602, at the time of proceedings against petitioner, provided in pertinent part: "Any person under the age of 21 years who violates any law of this State . . . defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

Unless otherwise specified, all references to statutory provisions are to sections of the Welfare and Institutions Code.

[2]Petitioner was charged in two counts with murdering the husband and wife who operated the store. The reported decision recites only that one of the counts, without specifying which, was dismissed. (*People* v. *Hurlic, supra,* 14 Cal.App.3d 122, 124-125.)

The question of exposure to jeopardy in juvenile court was rendered difficult by a partial destruction or loss of records of that court during an earthquake in 1971. We were unable to determine with certainty on the record initially presented to us whether proceedings before a juvenile court referee on 7 March 1969 were, as petitioner claims, adjudicatory in nature. An adjudicatory or jurisdictional hearing under section 602 is one at which a minor is exposed to a finding of truth of allegations contained in a petition filed pursuant to that section. Jeopardy attaches when the adjudicatory hearing is "entered upon." (*Richard M. v. Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; see also *In re Bryan, supra,* 16 Cal.3d 782.) ▉ The People claim the 7 March proceedings, while scheduled as an adjudicatory hearing when petitioner denied the truth of the allegations of the petition but nevertheless was detained, were limited to determination of petitioner's fitness to be treated within juvenile court facilities. Having been found unfit, juvenile court proceedings were terminated with no exposure to jeopardy according to the People. (See *Breed v. Jones, supra,* 421 U.S. 519, 538, fn. 18 [44 L.Ed.2d 346, 360]; *Bryan v. Superior Court* (1972) 7 Cal.3d 575, 582-583 [102 Cal.Rptr. 831, 498 P.2d 1079].)[3]

The uncertainty as to the nature of the 7 March proceedings is particularly reflected in a form document entitled "Findings of Referee" reciting, inter alia, the "matter coming on regularly to be heard . . . and evidence having been received and considered, the referee finds: . . . That the above named minor comes within the provisions of Section 602 of the Juvenile Court Law." If in fact the referee found petitioner to come within provisions of section 602 because the referee had found the allegations of the petition to be true, then the 7 March hearing must be deemed to have been jurisdictional. However, a portion of the document wherein is recited a form finding of the truth of the allegations has been deleted, and there is no express finding of the truth of such allegations. The People explain the ambiguity by documentary evidence of a prior, continuing adjudication of petitioner as coming within the provisions of section 602 for an earlier, unrelated offense. The quoted "finding," according to the People, is merely a recital of petitioner's status at the beginning of the 7 March hearing, based on the independent, prior adjudication.

---

[3]If petitioner was exposed to jeopardy in both juvenile court and criminal proceedings, the fact that such double exposure predated the Supreme Court's decision in *Breed* would not preclude the relief mandated by the rule announced in that case. In the case of *In re Bryan, supra,* 16 Cal.3d 782, this court held the rule announced in *Breed* is to be given retroactive application. (*Id.* at pp. 785-787.)

In view of the foregoing state of the record we ordered a reference for the purpose of receiving evidence and making findings on questions which we propounded to a referee, the Honorable Peter S. Smith, Judge of the Superior Court, County of Los Angeles. He has heard testimony of witnesses offered by the parties hereto, has received documentary evidence, has entertained argument by counsel, and has made his findings and report. The questions which were submitted to the referee and his findings in response thereto are set out in the margin.[4]

The referee found in pertinent respects that at the 7 March hearing the juvenile court referee did not make findings as to the truth of any of the allegations of misconduct charged in the petition, and the juvenile court

---

[4]Question No. 1: "What act or acts of misconduct on the minor's part were alleged in the petition filed on February 17, 1969 as grounds for bringing the minor within the provisions of Section 602 of the juvenile court law?"

Answer: "(a) That said minor, on or about December 19, 1968, at 1530 South Wilmington Avenue, Compton, County of Los Angeles, did wilfully and unlawfully and with malice aforethought murder Isabelle Patino Diosdado, a human being; thereby violating section 187 of the Penal Code. [¶] (b) That said minor on or about December 19, 1968, at 1530 South Wilmington Avenue, Compton, County of Los Angeles, did wilfully and unlawfully and with malice aforethought murder Joseph Diosdado, a human being; thereby violating section 187 of the Penal Code. [¶] (c) That said minor, on February 13, 1969, at 420 West Rosecrans Blvd., City of Compton, County of Los Angeles did wilfully and unlawfully possess a narcotic, to wit: Marijuana; in violation of Section 11530 of the Health and Safety Code."

Question No. 2: Did Referee Carl Maroney at the hearing on March 7, 1969: [¶] (a) Find that any of the acts of misconduct alleged in the petition filed on February 17, 1969 were true and, if so, which of the said acts did he find to be true? [¶] (b) In stating in his 'findings of Referee' of March 7, 1969 that the minor came within the provisions of Section 602 of the juvenile court law, did the Referee intend by such statement to then make a finding to the stated effect? If so, on what misconduct was the finding based, if not, on what was the statement based?"

Answer: "(a) No. [¶] (b) No. The statement was based on the fact that the minor had previously been declared a ward of the court under Section 602 for another offense and was presently on probation."

Question No. 3: "Which of the following best describes the purpose and effect of the hearing of March 7, 1969? [¶] (a) To find whether the minor came within the provisions of Section 602 of the juvenile court law because of the truth of one or more of the allegations of the petition filed on February 17, 1969. [¶] (b) To find whether the minor was a fit subject for care and treatment within the facility of the juvenile court. [¶] (c) To hearing evidence on both the question of the truth of the allegations of the petition filed on February 17, 1969, and the question whether the minor came within the provisions of Section 602 of the juvenile court law and after hearing such evidence to make findings first, as to the minor's fitness and second, if found to be fit, whether he came within the provisions of Section 602."

Answer: "To find out whether the minor was a fit subject for care and treatment within the facility of the juvenile court."

Question No. 4: "Was the nature of said hearing on March 7, 1969, such that Referee Maroney could probably have found, assuming that the evidence received would have

referee's statement in his "findings" of 7 March that petitioner came within the provisions of section 602 of the Juvenile Court Law was based wholly on the fact petitioner had been previously declared a ward of the court for unrelated prior misconduct. According to the referee, the purpose and effect of the hearing of 7 March was only to find whether petitioner was a fit subject for care and treatment within the facilities of the juvenile court, and the hearing was *not* of such nature the juvenile court referee could have found petitioner to have committed one or more of the acts of misconduct charged in the petition, assuming the evidence received would have supported such a finding or findings.

Petitioner objects to the referee's findings, contending generally the record supports only a finding the hearing of 7 March was intended as an adjudicatory hearing. The most compelling evidence in support of petitioner's contention is the undisputed fact that at the detention hearing the matter was continued until 7 March expressly for an adjudicatory hearing. It also appears petitioner testified at the reference his attorney had advised him the purpose of the hearing was to determine whether he had committed the violations charged in the petition. The juvenile court referee and a deputy district attorney, both of whom testified at the reference, disputed that an adjudicatory hearing was in fact held.[5] Most compelling is the testimony of the juvenile court referee. He referred to his written notes and stated that the matter had come before him for a fitness determination only, that the practice of his court then was not to permit an officer of the court who had made a finding on fitness to also make a finding on the jurisdictional question, and that absent a stipulation of the parties he was not then authorized or prepared to make further findings of the truth of the allegations of the petition if he had first found petitioner to be fit.[6]

---

supported such finding, that the allegations of one or more acts of misconduct charged in the petition filed on February 17, 1969 were true and that the minor therefore came within the provisions of Section 602 of the juvenile court law?"

Answer: "No."

[5]Although the 7 March hearing had been scheduled as a jurisdictional hearing for petitioner, it appears from testimony of the deputy district attorney his office had determined after petitioner had been detained to seek on 7 March only a fitness determination for both juveniles and, pursuant to motion therefor, only the question of fitness was placed in issue on that date.

[6]Documentary evidence received at the reference includes a probation report recommending "the minor having been found an unfit subject for consideration under the Juvenile Court Law, that the case be dismissed." Also included is a memorandum signed by the juvenile court referee, stating as follows: "The minor appeared before the Court on a petition alleging two counts of murder and one count of possession of marijuana which the minor denied. Testimony was taken which indicated that the

In further support of the referee's findings are documents relating to juvenile court proceedings for Bozzie Burton, petitioner's alleged accomplice. A petition pursuant to section 602 was filed on the same date as that filed against petitioner and, as in the case of petitioner, Burton was detained pending an adjudicatory hearing on 7 March. On that day the Burton matter was continued to 21 March, at which time a hearing was had and findings were made. The referee in that case did not find that the allegations of the petition were true or that Burton came within the provisions of section 602. He found only matters relevant to Burton's fitness for treatment within the juvenile court, concluding that Burton was unfit and certifying him for criminal proceedings.

The People argue persuasively that because the findings of the referee in the Burton case reflect only a fitness and not an adjudicatory hearing, and because the Burton and the instant cases were treated in the juvenile court according to the same plan of first determining the juvenile's fitness before proceeding to an independent adjudicatory determination if found to be fit, petitioner, like Burton, was subjected only to a fitness hearing. They urge the findings of the two juvenile court referees conform to such a common plan and are essentially identical in form except for the additional "finding" in petitioner's case made necessary by the fact he, but not Burton, was already within the jurisdiction of the juvenile court because of his prior adjudication.[7]

Petitioner also complains of the referee's response to question No. 4 (fn. 4, *ante*), contending there is ample evidence in the record to support a finding petitioner had committed one or more of the violations alleged in the petition. The record would, in fact, support such findings.

---

minor assisted in a brutal double murder in the commission of robbery. The Probation Officer had made a social study pursuant to 707 of the Welfare and Institutions Code which indicated that the minor has had several contacts with the law enforcement agencies for possession and use of drugs. He is currently on probation and it should be noted that he has been arrested since he has become 18 for the possession of marijuana, a felony. Although the Probation Officer's Report indicates the minor would be amenable to handling as a juvenile, the Court feels by reason of his recent delinquent history and the brutality of the current offense that he would not be a proper subject to be dealt with by the Juvenile Court and for this reason made the declaration of unfitness."

[7]At the time of the juvenile court proceedings herein we had not yet formally recognized that proceedings in both the juvenile and criminal courts for the same offense posed a jeopardy issue. (See *Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370, 375-376.) There thus appeared to be no compelling reason to avoid an initial jurisdictional finding if there was a likelihood the juvenile would later be found unfit for treatment within juvenile court facilities. Yet it appears that the instant juvenile court, certainly in the Burton case, sought to do just that.

However, the question asks whether the *nature of the hearing* was such that a finding of the truth of allegations could be made. The response to the question is well supported based on undisputed testimony of the juvenile court referee that having found on the question of fitness he could not under the then prevailing practice in his court also have found on the jurisdictional question.

The juvenile court referee further testified he permitted inquiries into the circumstances of the alleged murders to ascertain whether petitioner was only incidentally involved and, if more than incidentally involved, the degree of his brutality, if any. These matters were relevant to petitioner's fitness, particularly in view of a generally favorable probation report, according to the referee. Such inquiries are permissible under *Breed* for purposes of fitness determinations. ■ "[T]he Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain and embarrassment of two such proceedings." (*Breed* v. *Jones, supra,* 421 U.S. 519, 537-538 [44 L.Ed.2d 346, 360].) The court further notes "that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, *so long as the showing required is not made in an adjudicatory proceeding.*" (*Id.* at p. 538, fn. 18 [44 L.Ed.2d at p. 360], italics added.)[8]

■ We are not bound by the findings of the referee although they are entitled to great weight if supported on the record. (*In re Weber* (1974) 11 Cal.3d 703, 723-724 [114 Cal.Rptr. 429, 523 P.2d 229]; *In re Cameron* (1968) 68 Cal.2d 487, 497 [67 Cal.Rptr. 529, 439 P.2d 633].) ■ The

---

[8]It seems clear the 7 March hearing would be deemed adjudicatory if, had the referee first found petitioner to be fit for treatment within juvenile court facilities, he then could make further findings as to the truth of the allegations of the petition on the record already before him. If the proceedings when commenced were to serve such a dual purpose then the court at the outset would have entered upon a jurisdictional hearing because petitioner would then have been exposed to jeopardy. (*Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370, 376.) However, the juvenile court referee testified convincingly that his court did not then conduct such dual purpose hearings, except on stipulation of the parties, and that the 7 March hearing contemplated only a fitness determination. The referee's answers to questions Nos. 3 and 4 are consistent therewith.

findings herein are amply supported on the record and we adopt each of them. We are compelled on such findings to the conclusion the juvenile court proceedings on 7 March 1969 were conducted throughout as a hearing to determine only petitioner's fitness to be treated within juvenile court facilities. He thus was not exposed to jeopardy in juvenile court.

The order to show cause is discharged and petition for the writ denied.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.