[No. B048904. Second Dist., Div. Seven. June 24, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCUS BIVENS, Defendant and Appellant.

**COUNSEL**

Charles H. Clark, Jr. for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Carol Wendelin Pollack and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—After defendant waived his right to a jury trial, the court found defendant guilty of first degree murder of Kenneth Williams (count 1; Pen. Code, § 187, subd. (a)) and that proceedings on count 2, second degree robbery of Kenneth Williams (Pen. Code, § 211), were barred by the

proscription against double jeopardy. Defendant was sentenced to state prison for a term of 25 years to life. He appeals from the judgment contending that the proscription against double jeopardy bars his prosecution in superior court for murder after he had admitted allegations of robbery (Pen. Code, § 211) and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) on Kenneth Williams, in a juvenile court petition.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, defendant submitted the cause on the reporter's transcript of the testimony taken at his preliminary hearing, as well as the transcript of the preliminary hearing of a codefendant, the police reports, defendant's motion to dismiss on the ground of former jeopardy, defendant's petition for writ of prohibition to the Court of Appeal, and the record of defendant's juvenile court proceedings.[1]

The autopsy report on Kenneth Williams, admitted into evidence at defendant's preliminary hearing, stated that Williams died on February 20, 1988, after being in a persistent vegetative state since October 26, 1986, when he was assaulted and kicked about the head; Williams was taken to the hospital in a coma and remained in a coma until his death. The report attributed Williams's death to cranio-cerebral injuries due to blunt force trauma to the head.

Gretta Varner was coming home from work about 12:30 a.m. on October 26, 1986, when she saw three Black males, who looked like they were 14, 16, and 18 years of age, talking with a White male next to her apartment; the White male had some money in his hand; she identified the defendant as the youngest Black male; she did not know defendant's name, but previously had seen him in her neighborhood.

After Varner parked her car and got out, she saw all four people fighting; the Black males had beaten the White man to the ground, where defendant and the other two were kicking him; the older two males were robbing the victim while defendant hit and kicked him. Varner crossed the street and

---

[1]Appellant has not made part of the record on this appeal the police reports, the preliminary hearing transcript of his codefendant, or any juvenile court records. Pursuant to Evidence Code section 459, subdivision (a), we take judicial notice of the proceedings on the writ of prohibition (*Bivens* v. *Superior Court*, No. B041215), which were before the trial court. While the record of the proceedings on the writ of prohibition contains police reports and juvenile court records, it does not contain the preliminary hearing transcript of the codefendant. In light of the nature of the issue on appeal, and the fact that no party on appeal refers to any portion of the preliminary hearing transcript of the codefendant, we deem the transcript not to be pertinent to this appeal.

yelled to leave him alone, but they did not stop fighting the victim (Williams). After the three Black males ran away, Varner walked over to Williams and saw him bleeding from his mouth and nose; she asked him if he was okay, but Williams never responded, but just moaned like he was in pain. Varner's sister called the police.

On February 11, 1987, a three-count petition under section 602 of the Welfare and Institutions Code was filed against Marcus Bivens in juvenile court, alleging that he was born on September 2, 1970, that on October 26, 1986, when he was 16 years of age, he committed the felonies of attempted murder of Kenneth Williams (count 1), assault upon Williams with a deadly weapon and by means of force likely to produce great bodily injury (count 2; Pen. Code, § 245, subd. (a)(1)), and robbery of Williams (count 3; Pen. Code, § 211). Bivens was detained in juvenile hall pending further proceedings; on March 6, 1987, Bivens admitted the allegations of counts 2 and 3; count 1 (attempted murder of Williams) was dismissed.

On March 20, 1987, the court declared Bivens a ward of the court under Welfare and Institutions Code section 602 and ordered him committed to the California Youth Authority for a period not to exceed five years, eight months.[2]

After Kenneth Williams died (on Feb. 20, 1988), a new juvenile court petition was filed against Bivens on August 4, 1988, charging him with Williams's murder; on August 30, 1988, the court found Bivens unfit for juvenile proceedings; the juvenile petition was dismissed without prejudice and the matter was referred to the district attorney for prosecution.

On August 31, 1988, a felony complaint was filed against defendant charging him with murder and second degree robbery of Kenneth Williams. After preliminary hearing on October 4, 1988, defendant was held to answer. At the time of arraignment in superior court, defendant entered a plea of not guilty and also a plea of once in jeopardy, and on December 20, 1988, filed a motion to dismiss both counts of the criminal prosecution on the ground of former jeopardy; the district attorney filed opposition to the motion. After hearing on February 9, 1989, the court denied the motion. On April 10, 1989, defendant filed petition for writ of prohibition. Division Two of this court issued a May 2, 1989, order denying the petition.[3]

---

[2]Bivens received five years pursuant to count 3 (robbery); four years pursuant to count 2 (assault) was stayed. The eight months was imposed for a December 1986 violation of Health and Safety Code section 11350, possession of cocaine, which was the subject of another petition filed February 11, 1987.

[3]The May 2, 1989, order (*Bivens v. Superior Court* (B041215)) states in pertinent part: "The petition fails to state facts sufficient to form a basis for extraordinary relief with respect to

At the time of trial to the court, defendant renewed his motion to dismiss. The prosecutor conceded that the motion was well taken as to the charge of robbery (count 2). The court found the prosecution of the robbery to be barred, the defendant having been "placed once in jeopardy" on that count.[4] As to count 1, the court found the defendant guilty of murder, "that is murder in the first degree and murder being committed in the course of a robbery."

The principal issue on this appeal is whether the prohibition of double jeopardy barred appellant's prosecution for murder of Kenneth Williams. Relying heavily on *In re Bryan* (1976) 16 Cal.3d 782 [129 Cal.Rptr. 293, 548 P.2d 693], appellant contends that because the acts that caused Williams's death were the same acts that formed the basis for the juvenile court adjudications as to the counts for robbery and assault of Williams, jeopardy attached when he admitted the robbery and assault in juvenile court, and he subsequently could not be prosecuted for murder.

I

DOUBLE JEOPARDY

"Both the United States and California Constitutions provide that a person may not be twice placed in jeopardy for the same offense. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) ■ The double jeopardy clause of the Fifth Amendment applies to the states through the due process clause of the Fourteenth Amendment. [Citation.] The protection against double jeopardy in the California Constitution is the same as that in the federal Constitution." (*In re Saul S.* (1985) 167 Cal.App.3d 1061, 1064 [213 Cal.Rptr. 541].)

In California, the "constitutional guarantee has been codified by [Penal Code] section 1023, which provides: 'When the defendant is convicted or

---

Count 1, charging petitioner with murder. [Citations.] [¶] With respect to Count 2, charging petitioner with robbery, for the purpose of establishing felony-murder, double jeopardy does not prevent the People from adducing proof that petitioner robbed the victim. (*People v. Williams* (1987) 195 Cal.App.3d 398 [240 Cal.Rptr. 717].) Petitioner's assertion that double jeopardy prevents him from being convicted of robbery appears correct, and the People, in their memorandum in opposition to the petition, have not argued otherwise. Petitioner has not furnished us with a copy of his motion to dismiss, so we do not know whether he asked the superior court to dismiss the robbery count. Consequently extraordinary appellate relief as to that count is inappropriate at this point."

[4]Although the clerk's minute order indicated that the court found the defendant not guilty on the robbery count, we imply from the finding of a valid plea of former jeopardy as to count 2 that the court intended to dismiss count 2. At the time of sentence, both the prosecutor and defense counsel told the court that count 2 had been dismissed, and the court accepted such interpretation of the record. We therefore deem count 2 to have been dismissed.

acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading . . . .' ■ A guilty plea is equivalent to a conviction and bars a subsequent prosecution for the same offense. [Citations.]" (*Ellsworth* v. *Superior Court* (1985) 170 Cal.App.3d 967, 971-972 [216 Cal.Rptr. 589].)

■ "To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional Blockburger test." (*Grady* v. *Corbin* (1990) 495 U.S. 508, 516 [109 L.Ed.2d 548, 561, 110 S.Ct. 2084].) *Blockburger* v. *United States* (1932) 284 U.S. 299 [76 L.Ed. 306, 52 S.Ct. 180], was interpreted by the court in *Grady* to mean "that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not 'requir[e] proof of a fact which the other does not.'" (495 U.S. at p. 510 [109 L.Ed.2d at p. 557]; fn. omitted.) "If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred. [Citation.]" (*Id.*, at p. 516 [109 L.Ed.2d at p. 561].)

However, "a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in *Vitale* [*Illinois* v. *Vitale* (1980) 447 U.S. 410 (65 L.Ed.2d 228, 100 S.Ct. 2260)], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (495 U.S. at p. 521 [109 L.Ed.2d at p. 564].)[5]

---

[5]In *Grady*, the defendant was involved in a vehicle accident in which the driver of the other vehicle died later that day from injuries sustained in the accident; defendant was served with two traffic tickets for misdemeanor driving while intoxicated and failure to keep right of the median; although one assistant district attorney was informed of the victim's death, and another district attorney was investigating the case for a homicide prosecution, the former did not appear in court on the two traffic tickets and the latter did not attempt to ascertain the date the defendant was scheduled to appear; when defendant pleaded guilty to the two traffic tickets, no member of the district attorney's office was present and the judge was unaware of the fatality stemming from the accident; the assistant district attorney appearing at time of sentencing was unaware of the fatality and recommended a minimum sentence; defendant was sentenced to a $350 fine, a $10 surcharge and a 6-month license revocation. Two months later, the grand jury indicted the defendant on charges of, inter alia, second degree vehicular manslaughter, reckless manslaughter, and criminally negligent homicide; the New York Court of Appeals granted defendant's petition for writ of prohibition barring defendant's vehicular manslaughter prosecution pursuant to New York's statutory double jeopardy provision.

After granting certiorari, the United States Supreme Court affirmed, finding that "[b]y its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to

The court in *Grady* recognized an exception to the above principles: "We recognized in *Brown* v. *Ohio*, 432 U.S. 161, 169, and n. 7 [53 L.Ed.2d 187, 97 S.Ct. 2221] (1977), that when application of our traditional double jeopardy analysis would bar a subsequent prosecution, '[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence. See *Diaz* v. *United States*, 223 U.S. 442, 448-449 [56 L.Ed. 500, 32 S.Ct. 250] (1912); *Ashe* v. *Swenson*, 397 U.S. 436, 453, n. 7 [25 L.Ed.2d 469, 90 S.Ct. 1189] (1970)] (Brennan, J., concurring.)' " (*Grady* v. *Corbin, supra,* 495 U.S. at p. 516 [109 L.Ed.2d at p. 561, fn. 7].) This exception did not apply in *Grady* because the assistant district attorney was informed of the victim's death on the night of the accident. (*Ibid.*)

 Although appellant does not expressly address *Blockburger* or *Grady*, his arguments in his briefs on appeal can be characterized as arguments under the general principles of double jeopardy. Because we conclude that the exception to the general rule, established in *Brown* v. *Ohio* (1977) 432 U.S. 161, 168-169 [53 L.Ed.2d 187, 195-196, 97 S.Ct. 2221] as well as in our state's common law, applies herein we need not address the issue of whether this case meets the traditional *Blockburger* or *Grady* tests. The cases on which appellant bases his appeal are not dispositive, much less addressed to the facts of the instant case. In *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779], the defendant was prosecuted as an adult for robbery after a petition had been sustained against him in juvenile court on the same charge of robbery, after which the juvenile court determined in a dispositional hearing that he was unfit for treatment as a juvenile and ordered him prosecuted as an adult. The Supreme Court held that the defendant was put in jeopardy at the adjudicatory hearing when the juvenile court, as the trier of the facts, began to hear evidence, and the subsequent prosecution of him in superior court "violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment." (421 U.S. at p. 541 [44 L.Ed.2d at p. 362].)

The court in *Breed* expressly stated: "We intimate no views concerning the constitutional validity of transfer following the attachment of jeopardy at an adjudicatory hearing where the information which forms the predicate for the transfer decision could not, by the exercise of due diligence, reasonably

establish essential elements of the homicide and assault offenses. Therefore the Double Jeopardy Clause bars this successive prosecution. . . . This holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted (i.e., if the State relied solely on Corbin's driving too fast in heavy rain to establish recklessness or negligence)." (495 U.S. at p. 523 [109 L.Ed.2d at pp. 565-566]; fn. omitted.)

have been obtained previously. [Citation.]" (421 U.S. at p. 539, fn. 20 [44 L.Ed.2d at p. 361].) Accordingly, *Breed* reserves comment on the very situation presented in the instant case. A petition charging murder and proceeding seeking transfer to adult court could not have been filed against appellant at the time of his adjudicatory hearing on the robbery and assault charges in juvenile court; the victim had not died.[6]

## II

### EXCEPTION TO GENERAL RULE OF DOUBLE JEOPARDY

Long before *Brown* and *Grady*, the California Supreme Court in *People* v. *Wilson* (1924) 193 Cal. 512 [226 P. 5] recognized an exception to the bar of double jeopardy. In *Wilson*, defendant struck the victim with his automobile on October 21, 1922; later that day, while the victim was still alive, defendant was charged with a misdemeanor and was brought to trial on that charge; sometime during the trial of the cause, the victim died; defendant was charged with and convicted of manslaughter and the misdemeanor charge was dismissed. (*Id.*, at p. 514.)

The court in *Wilson* stated: "The law upon this subject is well settled in its application to cases where the defendant has committed an act of violence which in its immediate result amounts to a misdemeanor, but which in its after consequences upon the victim of the violent act becomes, through the death of that victim, murder or manslaughter. In such an event the second prosecution is not for the same offense as the first; and the reason for this is, as is well stated in Wharton on Criminal Pleading and Practice, ninth edition, section 476, 'that as at the time of conviction of assault there could have been no conviction of the homicide the prosecution of the homicide is not barred by the conviction of the assault.' [Citation.] . . . In none of the cases cited by the appellant in support of his contention as to his plea of 'once in jeopardy' does the element of death, which is the essential basis of the charge of manslaughter, appear to be present; nor upon principle do we think a case can be conceived wherein a charge of murder or manslaughter could be defeated by a plea of once in jeopardy based upon a mere misdemeanor

---

[6]*In re Bryan, supra,* 16 Cal.3d 782, the second case on which appellant greatly relies, is also inapposite. In *Bryan*, a petition was filed alleging petitioner murdered one victim and assaulted with intent to murder a second victim; the juvenile court adjudicated the petitioner a ward of the court after he admitted the homicide and committed him to the Youth Authority; after the Youth Authority refused to accept the commitment, petitioner was returned to the court, which found him unfit for juvenile court treatment and ordered prosecution under the general criminal law; in superior court, he was tried and convicted of second degree murder and assault with intent to commit murder. The court in *Bryan* held that *Breed* was to be given retrospective application, and that the prohibition against double jeopardy required that the convictions be vacated. (*Id.*, at pp. 787-788.)

charge, trial, or conviction of the assault or offense which had later resulted in the death of the injured victim." (193 Cal. at p. 515.)

The court in *In re Saul S., supra,* 167 Cal.App.3d 1061 acknowledged that the California cases which recognize the above exception to the general rule of double jeopardy involve misdemeanor convictions followed by prosecutions for homicide after the death of the victim. However, even though the case before it involved an attempted murder adjudication followed by a petition charging murder of the same victim, "this is a distinction without a difference because the rationale employed by these courts in recognizing the exception is the same." (*Id.,* at pp. 1066-1067.)

■ The rationale or public policy principle articulated in *In re Saul S.* is that even though the rule against multiple prosecutions is a procedural safeguard designed to prevent harassment, there is no harassment or fundamental unfairness when the defendant is prosecuted for the death of the victim which had not occurred at the time of the misdemeanor prosecution. (167 Cal.App.3d 1067.) Any risk of harassment is outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Moreover, society has an important interest in seeing that potential criminals are quickly prosecuted, and the state should not be forced to permit potentially dangerous criminals to roam the streets while waiting for the victim to die, or else be compelled to prosecute the lesser charge. (*Ibid.*)[7]

■ Because the factual and procedural background in *In re Saul S.* is similar to that of the instant case, we find it dispositive. In *In re Saul S.,* a petition was filed against the juvenile charging him with robbery and attempted murder of the victim, who, for over two years after the attack, was in critical condition living under 24-hour-a-day care; Saul S. admitted the attempted murder and was committed for a maximum of 9 years to the Youth

---

[7]Without citation of authority, appellant maintains that these policies do not apply when the victim's death is imminent and/or the accused is before the juvenile court. The first situation was addressed in *In re Saul S.,* which rejected the contention: "Respondent also urges that *Wilson* and *Breland* [*People* v. *Breland* (1966) 243 Cal.App.2d 644 (52 Cal.Rptr. 696)] are not controlling here because the victim was in critical condition living under 24-hour-a-day care following the attack. In this circumstance, respondent argues, the prosecution was overzealous in prosecuting almost immediately when, according to section 194, the People could have waited up to three years to file an attempted murder charge. Respondent's argument is not persuasive. Although the victim was in critical condition, it is unreasonable to require the prosecution to predict just when death from respondent's offense would occur, if at all. This is especially true today 'upon a consideration of the advances of medical and related science in solving etiological problems as well as in sustaining or prolonging life in the face of trauma or disease.' [Citation.]" (167 Cal.App.3d at p. 1067.)

By necessary implication, the court in *In re Saul S.* also rejected the claim that the exception to the general rule of double jeopardy established in *Brown* v. *Ohio* and *Wilson* is inapplicable in juvenile proceedings under Welfare and Institutions Code section 602.

Authority; thereafter, the victim died from the injury inflicted by Saul S.; a new juvenile petition was filed against him alleging murder; Saul S. moved to dismiss the petition on double jeopardy grounds; the court granted the motion and the People appealed from the judgment of dismissal.

The court in *In re Saul S.*, in reversing the judgment of dismissal, concluded that "the constitutional protection against double jeopardy does not bar prosecution of the murder charge against respondent notwithstanding his previous conviction of attempted murder based on the same occurrence. The offenses are not the same because the victim was alive at the time of the earlier conviction. This conclusion is consistent with [Penal Code] section 1023 implementing the constitutional protection against double jeopardy. That section bars prosecution for a necessarily included offense 'of which he might have been convicted under that accusatory pleading.' Respondent could not have been convicted of murder at his first trial because the victim was not dead." (167 Cal.App.3d at p. 1068.)

Applying *In re Saul S.* to the instant case, we conclude that the constitutional protection against double jeopardy did not bar the filing of a petition alleging murder against appellant in juvenile court. Moreover, defendant having been found unfit before any adjudicatory hearing on the murder petition, juvenile court proceedings were terminated with no exposure to jeopardy on the murder charge in juvenile court. (See *In re Hurlic* (1977) 20 Cal.3d 317, 321, 326 [142 Cal.Rptr. 443, 572 P.2d 57].) We conclude that appellant's murder conviction is not barred by principles of double jeopardy.

We also find without merit and unsupported by any pertinent authority appellant's claims that "The People, knowing the victim's death was imminent, should have filed a fitness motion before jeopardy attached to the proceedings concerning the petition filed on February 11, 1987," and that the People made a "purely procedural" error in not certifying him to be tried as an adult after the initial juvenile petition had been filed. (*Ante*, fn. 7.)

To the extent that appellant relies upon Penal Code section 654 to support his contentions herein, such reliance is misplaced, as it has been recognized that "exceptions [to section 654] are made where, at the time of the first proceeding, the prosecutor either was reasonably unaware of the offense he was seeking to prosecute in the second proceeding [citation] or where he had no election to make at that time since material circumstances pertinent to the second proceeding were not susceptible of discovery in time to avoid

multiplicity problems [citations]." (*People* v. *Smith* (1977) 70 Cal.App.3d 306, 315-316 [138 Cal.Rptr. 783].)[8]

### DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 1991.

---

[8]Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."