Filed 12/15/21  P. v. Bivens CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B307083 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A739677) |
| v. | |
| MARCUS BIVENS, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Marcus Bivens, convicted in 1986 of first degree murder, appeals the denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] after the superior court found, beyond a reasonable doubt, that Bivens could be convicted of felony murder under amended section 189, subdivision (e)(3), as a major participant in the underlying robbery who had acted with reckless indifference to human life. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Bivens's Felony-murder Conviction*

   a. *The robbery and assault*

Bivens, 16 years old at the time of the incident, was one of three young men who assaulted and robbed Kenneth Williams sometime after midnight on October 26, 1986. Gretta Varner testified she had just arrived home from work when she saw the attack. Initially, the four men, who all appeared to Varner to be teenagers, were talking near her apartment building. Williams had some cash in his hand.

As summarized in our opinion affirming Bivens's conviction for first degree murder (*People v. Bivens* (1991) 231 Cal.App.3d 653), after Varner parked and locked her car, she saw the four young men fighting: "[T]he Black males had beaten the White man to the ground, where [Bivens] and the other two were kicking him; the older two males were robbing the victim while [Bivens] hit and kicked him. Varner crossed the street and yelled to leave him alone, but they did not stop fighting the victim (Williams). After the three Black males ran away, Varner walked over to Williams and saw him bleeding from his mouth

---

[1]      Statutory references are to this code unless otherwise stated.

and nose; she asked him if he was okay, but Williams never responded, but just moaned like he was in pain. Varner's sister called the police." (*Id.* at pp. 656-657.)

Although at one point Varner testified she could not remember what part of Williams's body Bivens had kicked, when pressed, she said it was from the waist down as he lay on the ground. However, she confirmed Bivens, whom she had previously seen around the neighborhood, used both his hands and his feet when assaulting Williams. Bivens continued to strike and kick Williams while the other two assailants went through Williams's pockets and stole his wallet. The three men then fled.

Williams was transported to a hospital, where he remained in a coma for the next 16 months. (*People v. Bivens, supra,* 231 Cal.App.3d at p. 656.)

Bivens's probation report, admitted into evidence at his criminal trial, referred to unnamed witnesses, apparently interviewed by the police, who had described the assault and robbery and stated "all three suspects were actively participating in the attack of the victim even though it appears that the codefendant [Patrick Conner] may have been responsible for inflicting a greater amount of injury upon the victim." According to one of these witnesses, Conner "repeatedly struck the victim in the head, and forcibly pushed the victim's head against the concrete sidewalk." The probation report also stated Bivens admitted that he had planned the robbery in advance with Mario Daniels, one of the other perpetrators.

b. *The juvenile adjudication*

Following Bivens's arrest, the People filed a three-count delinquency petition pursuant to Welfare and Institutions Code section 602 alleging he had committed attempted murder, aggravated assault and robbery.  Bivens admitted the aggravated assault and robbery allegations; the attempted murder charge was dismissed.  Bivens was declared a ward of the court and ordered committed to the California Youth Authority for a period not to exceed five years eight months.  (*People v. Bivens*, *supra*, 231 Cal.App.3d at p. 657.)

c. *Williams's death and Bivens's conviction for murder*

Williams died on February 20, 1988 after being in a persistent vegetative state since the attack.  The autopsy report attributed the death to blunt force trauma to the head.  (*People v. Bivens*, *supra*, 231 Cal.App.3d at p. 656.)

A new juvenile petition was filed against Bivens, charging him with Williams's murder.  The juvenile court found Bivens unfit for juvenile proceedings, and the matter was transferred to the District Attorney for prosecution.  A felony complaint was filed charging Bivens with murder and robbery.  Bivens moved to dismiss both counts on the ground of former jeopardy.  Although the motion was initially denied, when renewed at the time of trial, the prosecutor conceded the motion was well taken as to the charge of robbery.  The trial court agreed as to that count.

Bivens waived his right to a jury trial; and the cause was submitted on the reporter's transcript of the testimony taken at Bivens's and Conner's preliminary hearings, the police reports and the record of Bivens's juvenile court proceedings.  The trial court found Bivens "guilty of the allegation set forth in count 1, that is, guilty of murder.  That it is murder in the first degree

4

and murder being committed in the course of a robbery." Bivens was sentenced to an indeterminate state prison term of 25 years to life.

This court affirmed the judgment on appeal, rejecting Bivens's argument that, because the acts that had caused Williams's death had formed the basis for the juvenile court adjudications of robbery and aggravated assault, jeopardy attached when he admitted those offenses, precluding his subsequent prosecution for murder. (*People v. Bivens*, *supra*, 231 Cal.App.3d at pp. 663-664.)

2. *Bivens's Petition for Resentencing*

On March 18, 2019 Bivens, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Bivens checked boxes on the printed form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). He repeated the allegations demonstrating his eligibility for resentencing in a typed attachment to the petition.[2]

After Bivens obtained counsel, the People filed a response to Bivens's petition, arguing Bivens had failed to make a prima facie showing he came within the provisions of section 1170.95 because he was the actual killer or aided and abetted the killing; he would still be convicted of second degree murder under an

_____

[2] Bivens's petition indicated he was no longer in custody.

implied malice theory; and he would still be convicted as an aider and abettor to felony murder as a major participant in the robbery of Williams, who had acted with reckless indifference to human life.  The prosecutor attached as exhibits the victim's autopsy report, this court's opinion affirming Bivens's murder conviction, Bivens's probation report and transcripts of proceedings at Bivens's criminal trial, including the preliminary hearing.  Bivens filed a reply.

At a hearing on August 4, 2020 the superior court indicated its view that Bivens had not made the prima facie showing required for issuance of an order to show cause, stating it was unclear whether Bivens, who had acted in concert with the other two perpetrators, was the actual killer, but he "most definitely" was a major participant who had acted with reckless disregard for his victim's life.  Bivens's counsel asked the court for an evidentiary hearing, emphasizing there was no evidence Bivens had delivered the fatal blow by hitting or kicking the victim in the head.

Notwithstanding its tentative view to deny the petition at the prima facie stage, noting the law regarding section 1170.95 proceedings was evolving and "in an abundance of caution," the court invited the prosecutor to stipulate to holding an evidentiary hearing.  The prosecutor agreed, and the court issued an order to show cause, which was heard two days later.

At the outset of the evidentiary hearing on August 6, 2020, the court observed it was now the People's burden to prove Bivens's ineligibility for resentencing.  The prosecutor submitted the exhibits attached to the People's opposition memorandum as evidence.  Bivens's counsel stated there were no additional witnesses or exhibits.  The court summarized the facts,

6

incorporating its factual description from the prior hearing, and also pointed out that the fatal blow to Williams's head could have been sustained when he fell to the ground as he was being beaten by his three attackers, "so the court cannot say that he was not the actual killer." The court continued, "But, more importantly, and I think that for these purposes is whether or not the court finds that he was a major participant, which the court does as it relates to the robbery, and whether he acted in reckless indifference, and the court most certainly finds that as it relates to Mr. Bivens and his conduct in this particular case." The court elaborated that Bivens, along with two others, beat the victim to unconsciousness and left him without rendering aid or assistance of any form. The court expressly found the People had proved Bivens's role as a major participant who acted with reckless indifference "beyond a reasonable doubt" and denied the petition for resentencing.[3]

Bivens filed a timely notice of appeal.

---

[3] Bivens's argument the superior court, applying an incorrect legal standard, also denied his petition because he could have been the actual killer misreads the court's ruling. Although the prosecutor argued the evidence of Bivens's role in the attack supported a finding he was either the actual killer or directly aided and abetted the killing and the court indicated the evidence on that point was unclear, the order denying Bivens's petition was based solely on the finding Bivens could be convicted of felony murder under amended section 189, subdivision (e)(3), because he was a major participant in the robbery who had acted with reckless indifference to life.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as it applies to aiding and abetting and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If a petition for resentencing contains all the information required by section 1170.95, subdivision (b)(1)(A), the court must appoint counsel to represent the petitioner, if requested; direct the prosecutor to file a response to the petition; permit the petitioner to file a reply; and determine if the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1170.95, subd. (c);[4] see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) In determining whether the petitioner has carried this burden, the superior court properly examines the record of conviction,

---

[4] As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the requirement to appoint counsel is set forth in new subdivision (b)(3) of section 1170.95, rather than subdivision (c).

"allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction." (*Id.* at p. 972.)

The prima facie inquiry under section 1170.95, subdivision (c), "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis*, *supra*, 11 Cal.5th at p. 971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974.) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

We review the superior court's factual findings following the evidentiary hearing for substantial evidence.  (*People v. Clements* (2021) 60 Cal.App.5th 597, 603, review granted Apr. 28, 2021, S267624; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113; *People v. Rodriguez*, *supra*, 56 Cal.App.5th at p. 238, review granted.)

2. *Section 189, Subdivision (e)(3), and the Narrowed Felony-murder Rule*

At the time of Bivens's trial section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including robbery, that resulted in a homicide.  (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.)  As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e), which requires proof of specific facts relating to the defendant's individual culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for new section 189,

10

subdivision (e)(3), were identified by the Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and reiterated most recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court has enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) ""'[N]o one of these considerations is necessary, nor is any one of them necessarily

11

sufficient."'"" (*Scoggins*, at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a '*grave risk of death*'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676- 677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

3. *Substantial Evidence Supports the Trial Court's Finding That Bivens Is Ineligible for Resentencing Relief Under Section 1170.95*

There can be no question substantial evidence supports the superior court's finding that Bivens was a major participant in the robbery of Williams. Bivens admitted he planned the robbery and discussed it in advance with one of his confederates. Bivens joined with the other two perpetrators as they viciously attacked Williams with their fists and feet, and Bivens continued to kick Williams as he lay on the ground while the other two men stole Williams's property. Bivens then fled with his associates without rendering any assistance to his unconscious victim. Bivens effectively concedes as much, acknowledging in his reply brief he "may have been a major participant" who applied force or fear to facilitate the robbery.

Although the proof Bivens acted with reckless indifference to human life during the robbery was not as overwhelming, that finding, too, is supported by substantial evidence.  (See *People v. Dalton* (2019) 7 Cal.5th 166, 244 [When considering a challenge to the sufficiency of the evidence to support a conviction, the reviewing court determines ""'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]  In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"'"]; see also *Clark*, *supra*, 63 Cal.4th at p. 626 ["'[w]here the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal'"].)

Bivens was not only physically present at the scene of the robbery but also actively participated in the violent manner in which the offense was committed, assisting in knocking Williams to the ground and continuing to repeatedly kick him as his confederates stole Williams's property.  Bivens, along with the two others, ignored Varner's cries to stop the beating and did nothing to try to minimize the risk of harm to Williams.  Bivens then fled with the other two men without making any attempt to aid Williams.

Bivens's argument that stopping to render aid to Williams would not have made any difference—Varner called for emergency assistance as quickly as he could have, he asserts—misses the point.  Providing help to the injured victim, whether or not ultimately effective, reflects on the defendant's state of

mind: Was he concerned about, or indifferent to, the risk of death created by the violence in which he participated? The answer as to Bivens is clear.

To be sure, there were valid countervailing considerations to a finding of reckless indifference. No guns or other weapons were used, and there was no evidence Bivens's planning contemplated the use of more force than necessary to accomplish the robbery or that he had previously engaged in criminal activities with his two confederates and knew either of them was likely to engage in acts of extreme violence. In addition, Bivens was only 16 years old at the time of the robbery, which arguably limited his ability to minimize the violent nature of the assault by his older partners (although there was no evidence he tried to do so). Moreover, Bivens's age itself is a relevant factor in determining whether he acted with reckless indifference because youths "generally are less mature and responsible than adults" and "often lack the experience, perspective, and judgment" to adequately appreciate the risk of death posed by their criminal activities. (*In re Moore* (2021) 68 Cal.App.5th 434, 453, internal quotation marks omitted; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 960, review granted Apr. 28, 2021, S267802.)

Nevertheless, although we might have balanced the competing factors differently, it is the superior court that must be persuaded beyond a reasonable doubt the petitioner can still be convicted of murder after Senate Bill 1437's amendments to section 188 and 189. The evidence in the record reasonably justified the superior court's conclusion. That it also would have supported a finding that Bivens did not act with reckless indifference to Williams's life does not warrant reversal of the

14

order denying his petition for resentencing.  (See *People v. Clements*, *supra*, 60 Cal.App.5th at p. 603, review granted; *People v. Rodriguez*, *supra*, 56 Cal.App.5th at p. 238, review granted; see also *People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)

## DISPOSITION

The postjudgment order denying Bivens's petition for resentencing under section 1170.95 is affirmed.


                                            PERLUSS, P. J.

We concur:



        SEGAL, J.



        FEUER, J.

15